UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ZIMMAIN TABB,

Plaintiff,

-v-

CAPTAIN ROSEMARY, CAPTAIN MCDONALD, C.O. WILLIAMS, C.O. WATKINS, ADJUDICATIONS CAPTAIN CAPUTO,

Defendants.

12 Civ. 1520 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

*Pro se* plaintiff Zimmian Tabb ("Tabb") brings this action pursuant to 42 U.S.C. § 1983, alleging excessive force and due process violations against Captain Rosemary ("Rosemary"), Captain Stacy McDonald ("McDonald"), Correction Officer Williams ("Williams"), Correction Officer Watkins ("Watkins"), and Adjudications Captain Joseph Caputo ("Caputo"), stemming from a March 27, 2010 inmate riot that occurred while Tabb was incarcerated at the George R. Vierno Center ("GRVC") on Riker's Island, and from Tabb's subsequent disciplinary hearings. Defendants McDonald and Caputo now move for partial summary judgment on Tabb's due process claim pursuant to Federal Rule of Civil Procedure 56.[1] Defendants also argue that Rosemary, Williams, and Watkins should be dismissed from this action for lack of service pursuant to Federal Rule of Civil Procedure 4(m). For the reasons that follow, defendants' motion for partial summary judgment is granted. However, defendants' motion for dismissal for

[1] For the purpose of identifying litigation positions taken on this motion, the Court will refer to McDonald and Caputo, collectively, as "defendants."

lack of service is denied; the Court instead grants Tabb a 60–day enlargement of time to serve the summons and complaint upon defendants Rosemary, Williams, and Watkins.

## I. Background[2]

### A. Facts of the Instant Case

In March or April 2008, Tabb was taken into New York City Department of Corrections ("DOC") custody on charges of attempted murder. Def. 56.1 ¶ 2; Lulich Decl. Ex. C ("Inmate Details"). While awaiting trial, Tabb was detained at GRVC on Riker's Island, in housing area 17B. Def. 56.1 ¶ 2; Inmate Details. On or about March 27, 2010,[3] the detainees of housing area 17B were ordered to retire to their cells (or "lock in") for the evening; Tabb and 20 other detainees refused to do so, and remained standing in the common area despite several orders to lock in. Def. 56.1 ¶¶ 4, 5. Several correction officers responded to the scene; a riot ensued. *Id*. ¶¶ 6, 7. Several inmates, including Tabb, forcibly resisted the officers. *Id*. ¶ 7. Several officers reported that they witnessed Tabb use weapons, including a table and a baton, to strike officers

[2] Because the motion for partial summary judgment is unopposed, the Court's account of the underlying facts of this case is drawn primarily from McDonald and Caputo's submissions in support of this motion, including: the Declaration of Aimee K. Lulich in Support of Motion for Summary Judgment ("Lulich Decl.") (Dkt. 25), and the exhibits attached thereto; and defendants' Rule 56.1 Statement ("Def. 56.1 Statement") (Dkt. 27). Citations to defendants' 56.1 Statement incorporate by reference the documents cited therein. Where facts stated in a party's 56.1 Statement are supported by testimonial or documentary evidence, and are not contradicted by admissible evidence, *e.g.*, Tabb's deposition testimony, the Court has found such facts to be true. *See* S.D.N.Y. Local Rule 56.1(c) ("Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party."); *id*. at 56.1(d) ("Each statement by the movant or opponent . . . controverting any statement of material fact[ ] must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c).").

[3] The Complaint indicates that the incident took place on March 26, 2010; the defendants' Rule 56.1 Statement and supporting exhibits recite the relevant date as March 27, 2010. For clarity, and because the precise date is not material to the Court's ruling on this motion, the Court will use the date contained in the defendants' submissions.

attempting to quell the riot. *Id.* ¶¶ 8, 9; Lulich Decl. Ex. E. Tabb was handcuffed and removed from the scene. Def. 56.1 ¶ 10. He was later treated at Elmhurst Hospital Emergency Room for the injuries he sustained during the riot. *Id.* ¶ 11; Lulich Decl. Ex. K.

On March 28, 2010, Tabb was transferred to pre-hearing detention and charged with assault on staff, rioting, refusing an order, possession of a weapon, and delaying the count.[4] Def. 56.1 ¶ 12; Lulich Decl. Ex. F, G. On April 14, 2010, the charges against Tabb were heard in a disciplinary hearing conducted by Caputo. Def. 56.1 ¶ 13; Lulich Decl. Ex. D ("Hearing Tr."). The evidence presented at the hearing included the reports of several officers present at the scene, photos of the injuries sustained by those officers, and the report of Captain Butler, who investigated the infraction. *See* Hearing Tr. 2−8. At the hearing, Tabb was given the opportunity to call witnesses, but elected not to do so. *See id.* at 1. Tabb was also given an opportunity to make a statement on his own behalf; Tabb did so, after Caputo explained that anything he said could be used against him at a later criminal proceeding, and denied the charges against him. *See id.* at 8−11. Based on the evidence adduced at the hearing, Caputo concluded that Tabb had committed a disciplinary infraction, and sentenced him to a total of 230 days in punitive segregation and a fine of $100 in medical restitution. Def. 56.1 ¶ 17; Lulich Decl. Ex. I. Tabb served a total of 89 days in punitive segregation: 26 days in mental health punitive segregation at GRVC, and 63 days in general population punitive segregation at the Otis Bantum Correctional Center ("OBCC"). Def. 56.1 ¶ 18; Inmate Details. On June 24, 2010, Tabb was transferred out of DOC custody and into state custody. *Id.*

[4] The transcript of Tabb's infraction hearing indicates that Tabb received notification of the charges against him. *See* Hearing Tr. at 1. A Notice of Pre-Hearing Detention was produced by defendants in connection with this motion, but that document indicates that Tabb "[r]efused to sign" the section certifying that he received a copy of this notice. *See* Lulich Decl. Ex. H.

**C. Procedural History**

On February 29, 2012, Tabb, proceeding *pro se*, brought this action under 42 U.S.C. § 1983, alleging that defendants used excessive force against him during the March 27, 2010 riot and violated his procedural due process rights by imposing punitive segregation following the April 14, 2010 disciplinary hearing. Dkt. 2 ("Complaint"). Specifically, Tabb alleges that (1) Correction Officers Williams and Watkins, under the supervision of Captains Rosemary and McDonald, assaulted him while attempting to quell the riot, causing injuries to, *inter alia*, his head, neck, and lower back, as well as lacerations to his wrists and ankles; and (2) in the disciplinary hearing that followed the riot, Captain Caputo denied him the opportunity to call witnesses, present evidence, or give a statement on his own behalf. Complaint at 3. He seeks money damages totaling $1.25 million: $500,000 in compensatory damages for the alleged use of excessive force; $250,000 in compensatory damages for the time spent in administrative segregation; and $500,000 in punitive damages. *Id.* at 5.

On March 7, 2012, the Court issued an Order of Service requesting, *inter alia*, that, because Tabb was a *pro se* litigant proceeding *in forma pauperis*, defendants waive service of process. Dkt. 7. On March 9, 2012, the New York City Department of Corrections agreed to waive service on behalf of defendants McDonald and Caputo, but declined to do so on behalf of defendants Rosemary, Williams, and Watkins. Dkt. 9–12. On March 23, 2012, a Rule 4 Service Package that contained, *inter alia*, an original summons and copies of the summons, a *pro se* handbook, United States Marshals (USM–285) forms, and affirmation of service forms, was mailed to Tabb at Downstate Correctional Facility. On that date, a summons was also issued as to Rosemary, Williams, and Watkins; the docket sheet does not reflect that they were timely served.

On June 7, 2012, McDonald and Caputo answered. Dkt. 15. By letter dated March 19, 2013, Tabb expressed concern that Rosemary, Williams, and Watkins had not yet been served with process, and requested that the Court "advise the Clerk's Office to forward copies of all summons / process to defendants in this case." Dkt. 21. Tabb further noted his "understanding [that] it was the responsibility of the U.S. Marshalls [sic] to effect service on all defendants named in [the] complaint." *Id.* No further action to effect service was taken. On April 9, 2013, counsel for defendants submitted a letter to the Court requesting, *inter alia*, that defendants Rosemary, Williams, and Watkins be dismissed from this action pursuant to Rule 4(m) of the Federal Rules of Civil Procedure, because they had never been properly served with process. Dkt. 22. On May 24, 2013, McDonald and Caputo filed the present motion for partial summary judgment as to Tabb's due process claim pursuant to Federal Rule of Civil Procedure 56. Dkt. 24. They did not move, however, against Tabb's excessive force claim. In their motion, McDonald and Caputo also requested that the claims against Rosemary, Williams, and Watkins be dismissed for lack of proper service. Tabb's opposition was due on June 27, 2013.

On July 18, 2013, the Court, having not received Tabb's opposition to the motion for partial summary judgment, issued an Order *sua sponte* granting Tabb an extension of time to respond until August 8, 2013. Dkt. 28. The Order made clear, however, that if Tabb failed to respond by August 8, 2013, the Court would treat the motion as unopposed. *Id.*

By letter dated July 24, 2013, Tabb requested another extension of time to respond. Dkt. 30.[5] Tabb argued that he was entitled to such an extension because he was a *pro se* litigant and did not know how to respond to the motion for partial summary judgment. *Id.* On September 17, 2013, the Court issued an Order denying Tabb's request for an extension of time because

[5] This letter was received by the Court on July 30, 2013, but was not docketed until September 9, 2013. *See* Dkt. 30.

"nothing in Mr. Tabb's letter explain[ed] how another extension would enable Mr. Tabb to complete and submit his opposition to summary judgment."  Dkt. 31.

## II.    Legal Standard

To prevail on a motion for summary judgment, the movant must "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The movant bears the burden of demonstrating the absence of a question of material fact.  *See Vt. Teddy Bear Co. v. 1–800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004).  This burden remains the same where the motion for summary judgment is unopposed.  *See id.* ("If the evidence submitted in support of the summary judgment motion does not meet the movant's burden of production, then 'summary judgment must be denied even if no opposing evidentiary matter is presented.'") (quoting *Amaker v. Foley*, 274 F.3d 677, 681 (2d Cir. 2001)).  "[I]n determining whether the moving party has met this burden of showing the absence of a genuine issue for trial, the district court may not rely solely on the statement of undisputed facts contained in the moving party's Rule 56.1 statement.  The court must be satisfied that the citation to evidence in the record supports the assertion."  *Id.*  In making this determination, the Court must view all facts "in the light most favorable" to the non-moving party.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also Holcomb v. Iona Coll.*, 521 F.3d 130, 132 (2d Cir. 2008).

Only disputes over "facts that might affect the outcome of the suit under the governing law" will preclude a grant of summary judgment.  *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986).  In determining whether there are genuine issues of material fact, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the

party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (citing *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)).

## III. Discussion

### A. Tabb's Due Process Claim[6]

Section 1983 provides a remedy for deprivations of an individual's constitutional rights by a person acting under color of state law. *See* 42 U.S.C. § 1983. "A § 1983 claim has two essential elements: (1) the defendant acted under color of state law; and (2) as a result of the defendant's actions, the plaintiff suffered a denial of h[is] federal statutory rights, or h[is] constitutional rights or privileges." *Annis v. Cnty. of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998).

Tabb alleges that the disciplinary hearing that led to his punitive segregation deprived him of his procedural due process rights as secured by the Fourteenth Amendment. To show a due process violation, "a plaintiff must establish (1) that he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process." *Giano v. Selsky*, 238 F.3d 223, 225 (2d Cir. 2001) (citation and internal quotation marks omitted). "Prison discipline implicates a liberty interest when it 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Ortiz v. McBride*, 380 F.3d 649, 654 (2d Cir. 2004), *cert. denied*, 543 U.S. 1187 (2005) (quoting *Sandin v. Conner*, 515 U.S. 472, 484

---

[6] The record is unclear as to whether Tabb exhausted his administrative remedies with respect to his due process claim. Tabb claims that he appealed the result of his disciplinary hearing through an Article 78 proceeding, but that the appeal was mooted when he was transferred out of DOC custody. *See* Complaint at 5. Defendants claim that Tabb did not exhaust his administrative remedies. Def. Br. 9 & n.4 (Tabb "failed to take advantage of the procedural safeguards provided by DOC to ensure due process rights are preserved"); Def. 56.1 ¶ 19 ("Plaintiff did not appeal the infraction decision."). Because defendants do not argue that Tabb's claims should be dismissed on this basis, the Court, for purposes of deciding the motion for partial summary judgment, assumes without deciding that Tabb exhausted his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a).

(1995)). "Although there is no bright-line rule regarding the length or type of sanction that would give rise to an 'atypical and significant hardship,' this standard will not be met unless the disciplinary and administrative sanctions are onerous." *Jenkins v. Haubert*, 179 F.3d 19, 28 (2d Cir. 1999) (quoting *Sandin*, 515 U.S. at 486). "Factors relevant to determining whether the plaintiff endured an 'atypical and significant hardship' include 'the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions' and 'the duration of the disciplinary segregation imposed compared to discretionary confinement.'" *Davis v. Barrett*, 576 F.3d 129, 133 (2d Cir. 2009) (quoting *Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004)). Whether prison discipline meets the "atypical and significant hardship" standard is a question of law for the Court. *See Sealey v. Giltner*, 197 F.3d 578, 585 (2d Cir. 1999) ("[t]he content of the *Sandin* standard of 'atypical and significant hardship' is an issue of law," that need be submitted to the jury only "if the facts concerning the conditions or the duration of confinement are reasonably in dispute").

Tabb alleges that he was subjected to unduly harsh conditions during his period of disciplinary confinement. Specifically, he claims that, while in mental health punitive segregation at GRVC (for the first 26 days of his segregation), he was unable to shower every day, did not have telephone privileges, and was not able to receive letters. *See* Deposition of Zimmain Tabb, Lulich Decl. Ex. B ("Tabb Dep.") at 152−54. He further claims that he was treated more harshly than the other inmates. *See id.* at 153−54 (Q: "You are alleging you are being treated differently than the other people in [mental health segregation]?" A: "Yes."). In support of this claim, he asserts that, unlike other inmates, he (1) had nothing in his cell but a single bedsheet; and (2) was forced to wait until nighttime to see visitors. *See id.* at 154−55.

Even accepting Tabb's account as true, these conditions are insufficiently "onerous" to meet the "atypical and significant hardship" standard. *See, e.g.*, *Ortiz*, 380 F.3d at 655 ("solitary confinement for 23 hours per day, one hour of exercise in the prison yard per day, and two showers per week" not atypical); *Sealey*, 197 F.3d at 581, 589-90 (no atypical and significant hardship found where an inmate was confined to his cell 23 hours per day, could take no more than three showers per week, had limited library privileges, no telephone privileges, the atmosphere was noisy because there was no quiet bell, and occasionally inmates threw feces at other inmates); *Arce v. Walker*, 139 F.3d 329 (2d Cir. 1998) (one hour of exercise a day and exclusion from communal meals and religious services is not atypical). Although Tabb claims that he was treated more harshly than other prisoners, there is no indication that the conditions of Tabb's punitive segregation were "substantially more grave" than the normal conditions of confinement. *Welch v. Bartlett*, 196 F.3d 389, 392 (2d Cir. 1999); *see also Frazier v. Coughlin*, 81 F.3d 313, 317 (2d Cir. 1996) (no due process right implicated where plaintiff failed to show that the conditions of punitive segregation were "dramatically different" from conditions in general population); *accord Freeman v. Goord*, No. 02 Civ. 9033 (PKC), 2005 WL 3333465, at *9 (S.D.N.Y. Dec. 7, 2005). Indeed, the conditions to which Tabb objects—limited shower privileges, lack of telephone access, spartan accommodations—are on par with the normal conditions of confinement. *Cf. Ortiz*, 380 F.3d at 655; *Williams v. Goord*, 111 F. Supp. 2d 280, 288 (S.D.N.Y. 2000). Moreover, Tabb experienced the objected-to conditions for a period of only 26 days; thereafter, he was transferred to general population punitive segregation at OBCC, where he did not find his conditions of confinement objectionable. *See Ortiz*, 380 F.3d at 654 ("periods of confinement of less than 101 days may implicate a liberty interest" only where conditions of confinement are "abnormal or unusual") (collecting cases); *Palmer*, 364 F.3d at 66

(fact question as to whether 77-day period of solitary confinement had deprived plaintiff of a constitutionally-protected liberty interest because confinement was under unusually harsh conditions); *see also Williams*, 111 F. Supp. 2d at 288 ("The Second Circuit has emphasized that the *Sandin* analysis entails both a consideration of the duration of the challenged confinement as well as a fact-intensive examination of the conditions of that confinement.") (collecting cases).

Because the conditions of Tabb's punitive segregation were not sufficiently severe to implicate a constitutionally protected liberty interest, the Due Process Clause was not implicated by his administrative hearing. *See Palmer*, 364 F.3d at 64 (plaintiff "had no right to due process [at his hearing] *unless* a liberty interest was infringed as a result") (internal quotation marks omitted) (alteration and emphasis in *Palmer*); *Colon v. Howard*, 215 F.3d 227, 230 (2d Cir. 2000) ("[T]he Constitution d[oes] not require that restrictive confinement within a prison be preceded by procedural due process protections unless the confinement subjected the prisoner to 'atypical and significant hardship on the inmate in relation to ordinary incidents of prison life.'") (quoting *Sandin*, 515 U.S. at 484). Accordingly, the purported denial of due process in Tabb's April 14, 2010 disciplinary hearing is not grounds for a § 1983 claim. *See Welch*, 196 F.3d at 392 ("actions under the Due Process Clause are reserved for prisoners enduring a hardship that is substantially more grave than hardships they would be likely to endure simply as a consequence of the ordinary administration of the prison").

In any event, even if the conditions of Tabb's segregation did implicate a liberty interest protected by the Fourteenth Amendment, the undisputed facts in the record show that Tabb received adequate process in the April 14, 2010 disciplinary hearing.

When "faced with disciplinary charges that could result in confinement imposing significant, atypical hardship," inmates are constitutionally entitled to certain procedural

safeguards short of "'the full panoply of rights' due to a defendant in a criminal prosecution."

*Hernandez v. Selsky*, 572 F. Supp. 2d 446, 450 (S.D.N.Y. 2008) (quoting *Sira v. Morton*, 380

F.3d 57, 69 (2d Cir. 2004)).  The procedural safeguards include "(1) advance written notice of

the disciplinary charges; (2) a reasonable opportunity to call witnesses and present evidence at a

hearing; (3) a fair and impartial hearing officer; (4) a written statement of disposition, including

findings of fact and the reasons for the disciplinary action; and (5) support by 'some evidence' of

any conviction." *Id.*

       The evidence in the record reveals that these procedural safeguards were provided.  First,

the record indicates that DOC officials attempted to provide Tabb with advance written notice of

the charges against him, but that he refused to sign the papers upon delivery.  *See* Lulich Decl.

Ex. E, H.  Although Tabb claims he was never served with such notice, he admits to having

received "paperwork about being infracted."  Tabb Dep. at 185.   On this basis, the Court is

satisfied that Tabb had sufficient advance notice of the disciplinary hearing.  Second, although

Tabb alleges that he was not given the opportunity to call witnesses or make a statement on his

own behalf, *see* Complaint at 3, the transcript of the hearing makes clear that Caputo gave Tabb

multiple opportunities to call witnesses and present evidence, but Tabb declined to do so, save to

state for the record that he was innocent of the charges against him, *see* Hearing Tr. at 1, 8−11.

Third, although Tabb claims that Caputo "swindled" him, Tabb Dep. at 201, this statement is

wholly conclusory; there is no record evidence indicating that Caputo was anything but fair and

impartial.  Fourth, the record also indicates that, following the hearing, Caputo provided Tabb

with a written statement of disposition, including findings of fact and the reasons for the

disciplinary action.  *See* Lulich Decl. Ex. I.  Lastly, the evidence at the hearing—including

officer reports and injury photos—provided more than sufficient evidence to support Caputo's

decision. *See Sira*, 380 F.3d at 76 ("some evidence" standard satisfied where "there is any evidence in the record that *could* support the conclusion reached by the disciplinary board") (emphasis added); *accord Hernandez,* 572 F. Supp. 2d at 452.

In sum, there is no basis in the record for Tabb's allegation that the imposition of punitive segregation, following the April 14, 2010 disciplinary hearing over which Caputo presided, deprived him of due process of law.[7] Defendants' motion for partial summary judgment on Tabb's due process claim is, therefore, granted.

**B. Claims Against Defendants Rosemary, Williams, and Watkins**

Federal Rule of Civil Procedure 4(m) provides that "[i]f service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court—upon motion or on its own initiative after notice to the plaintiff—shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." Fed. R. Civ. P. 4(m). The Court has the discretion to grant an extension of time in the absence of good cause. *See Meilleur v. Strong*, 682 F.3d 56, 61 (2d Cir. 2012) ("district courts have discretion to grant extensions, and may do so even in the absence of 'good cause'"); *see also Zapata*, 502 F.3d at 196.

"[A]n incarcerated *pro se* litigant proceeding *in forma pauperis*," such as Tabb, is "entitled to rely on service by the U.S. Marshals." *Romandette v. Weetabix Co.*, 807 F.2d 309 (2d Cir. 1986). "As long as the *pro se* prisoner provides the information necessary to identify the defendant, the Marshals' failure to effect service automatically constitutes 'good cause' for an

[7] Because the Court denies Tabb's due process claim on the merits, the Court does not have occasion to consider defendants' separate argument that Caputo was not personally involved in the decision to implement particular conditions of confinement, *see* Def. Br. 7.

extension of time within the meaning of Rule 4(m)." *Murray v. Pataki*, 378 F. App'x 50, 52 (2d Cir. 2010).

Here, the summons for Rosemary, Williams, and Watkins were returned unexecuted on March 9, 2012. On March 23, 2012, a Rule 4 Service Package was mailed to Tabb at his last known address.[8] The docket sheet does not reflect that Tabb ever returned the requisite forms to the Marshals Service. On March 19, 2013, Tabb wrote to the Court noting that he intended to rely on the Marshals for service and expressing his concern that Rosemary, Williams, and Watkins had not yet been served; but this letter came nearly after a year after the summons had been issued. The Court's records, moreover, do not reflect any additional effort to effect service. It regrettably appears that the Court, for its part, failed, after receiving Tabb's March 19, 2013 letter, to direct the Marshals to effect such service.

Having considered the competing arguments, the Court declines to dismiss Tabb's claims against Rosemary, Williams, and Watkins for lack of service. To be sure, although the Court has "an obligation . . . to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training . . . such protection 'does not exempt a party from compliance with relevant rules of procedural and substantive law.'" *Sellers v. Royal Bank of Canada*, No. 12 Civ. 1577 (TPG), 2013 WL 1222668, at *1 (S.D.N.Y. March 21, 2013) (citing and quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)); *accord Johnson v. DHS/ICE*, No. 13 Civ. 0288A (SR), 2013 WL 6669232, at *3 (W.D.N.Y. Dec. 18, 2013). "If a plaintiff proceeding [*in forma pauperis*] chooses to rely on the Marshals to serve the relevant parties, and it becomes apparent that the Marshals will not accomplish this by the Rule 4(m) or

[8] It is not clear from the record whether Tabb ever actually received the Rule 4 Service Package. The docket sheet indicates that the materials were mailed to Tabb at the Downstate Correctional Facility on March 23, 2012, but that he filed a notice of change of address shortly thereafter.

court-ordered deadline, []he must advise the district court that []he is relying on the Marshals to effect service and request a further extension of time for them to do so." *Meilleur*, 682 F.3d at 63. Here, Tabb did not timely request an extension of time to effect service, nor does he offer an explanation for his failure to do so. *See, e.g.*, *Prophete v. New York Police Dep't*, 383 F. App'x 77, 78 (2d Cir. 2010) (affirming district court's dismissal, *sua sponte*, of claims against a defendant police officer where plaintiff did not make any effort to serve defendant within 120 days of the issuance of a summons, and did not request an extension of time). And "ignorance of the law, even on the part of a *pro se* litigant, is not 'good cause' under Rule 4(m)," such that an extension of time to effect service would be required. *Johnson*, 2013 WL 6669232, at *3.

On the other hand, in March 2013, Tabb did, albeit belatedly, seek the Court's assistance in effectuating service. And the Court has the discretion to grant an extension of time, even in the absence of good cause. *See Zapata*, 502 F.3d at 196. In determining whether to grant such an extension, courts have considered: "(1) whether the applicable statute of limitations would bar the refiled action; (2) whether the defendant had actual notice of the claims asserted in the complaint; (3) whether the defendant had attempted to conceal the defect in service; and (4) whether the defendant would be prejudiced by the granting of plaintiff's request for relief from the provision." *Jordan v. Forfeiture Support Assocs.*, 928 F. Supp. 2d 588, 598 (E.D.N.Y. 2013) (internal quotation marks omitted).

Defendants did not move for summary judgment on Tabb's excessive force claim, so this claim presumably will proceed to trial against, at the very least, defendant McDonald. Dismissing, for want of service, the claims against Rosemary, Williams, and Watkins, whom Tabb alleges were involved in the March 27, 2010 riot, could potentially lead to a re-filing of Tabb's lawsuit against those defendants, and, eventually, to a second trial on Tabb's excessive

force claim.  The interest in judicial economy favors granting Tabb an extension of time to serve these defendants, so that his excessive force claim against all four defendants can be resolved in the same proceeding.  Moreover, although Rosemary, Williams, and Watkins were never formally served, they were on notice of the charges against them—the Court, in fact, asked them early in the case to consider waiving service—and their employer, DOC, was at all times aware of it.  Further, defendants are all DOC employees and will presumably be represented by common counsel (the New York City Law Department).  And defendant McDonald, who waived service and has vigorously litigated this case, would appear to have had an equal interest to defendants Rosemary, Williams, and Watkins in defending against Tabb's claims.  Accordingly, there would appear to be little if any prejudice to the three as-yet unserved defendants occasioned by the delay in serving them.

Based on these considerations, the Court finds that a 60-day enlargement of time to serve the summons and complaint upon defendants Rosemary, Williams, and Watkins is warranted.

## CONCLUSION

For the foregoing reasons, the motion for partial summary judgment is granted, and Tabb's due process claim is dismissed.  Tabb is hereby ordered to properly serve defendants Rosemary, Williams, and Watkins, in accordance of Federal Rule of Civil Procedure 4, no later than March 21, 2014.  Tabb is advised that if he does not properly serve these defendants by March 21, 2014, the complaint will be dismissed against them without prejudice.  The Clerk of Court is directed to terminate the motion at docket number 24.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: January 22, 2014
New York, New York

